Mr. Justice Clayton
delivered the opinion of the court.
This controversy grows out of the provisions of the will of William Pescod, deceased. The following clause is mainly involved in the dispute. “ I give to the three daughters of *356 Malinda Taylor the sum of four thousand dollars each, to be secured to them in the best manner practicable, and the interest accruing thereon to be paid to Malinda Taylor, for their support and education ; moreover, till this donation be secured, to pay the said Malinda Taylor the sum of three hundred dollars per annum, from the first of January next. This donation to be paid to each, when of age or married, and in case of the death of all the parties abovementioned, said donation to revert to my legal heirs.”
After some other legacies, he gives the residue of his estate to his mother and other specified relatives, his legal heirs, and concludes by saying, “ to carry fully in effect all my above bequests, I hereby appoint William H. Benton and William S. Bodley jointly my administrators.”
Bodley alone qualified as executor, the other having renounced, and this petition was filed in the probate court of Warren, by the eldest daughter of Malinda Taylor and her husband, to have her legacy paid out of the estate. The answer of Bodley sets up as a defence, that he had, in pursuance of the directions of the will, loaned out four thousand dollars of the estate to Henry W. Vick, and eight thousand dollars to John Thatcher and John F. Bodley, and had taken mortgages to secure the payment of the same with interest, on property deemed ample at the time for the purpose, but which, by change of times, had become wholly insufficient. The answer tenders the mortgages in court, insists the appropriation was for the benefit of the legatees, and that the loss must fall upon them, and not upon the estate.
The probate court made a decree for payment of $4000, with interest, to the petitioners, from which an appeal is taken to this court.
In support of the decree it has been argued, that as Benton and Bodley were jointly appointed administrators of the will, Bodley alone was not authorized to make the loan in question — that a power to two executors jointly, cannot be exercised by one singly, and hence that the loss could not be made to fall on the legatees.
*357 At common law, where a power was given by will to executors to sell land, and one of them refused the trust, the others could not sell. But the statute, 21 Hen. VIII. ch. 4, altered this rule, and provided that a sale by such of the executors, as accepted the administration of the will, should be valid. Sug. on Pow. 75; 2 Wms. on Ex. 686. Sugden remarks, that the liberality of modern times will probably induce the courts to hold, that in every case, where the power is given to executors, as the office survives so may the power ; and equity will interpose to prevent the consequences arising from the extinction of the power. Sug. on Pow. 78. A similar language is held in Peter v. Beverly, 10 Pet. 564. Our statute expressly authorizes, in such cases, the executors, or such of them as shall undertake the execution of the will, to sell the lands devised to be sold. H. & H. 413, sec. 90.
This provision, it is true, does not apply to a state of case like the present, nor was it necessary that it should. By the common law the authority of executors did not extend to land; without express direction by will, real estate did not enter into the course of administration. Hence, when power was given to executors to sell land, an exact compliance with the terms of the power was required. So distinct was the exercise of the power of sale, from the administration of the effects, that the persons named as executors might exercise the power of sale, though they renounced probate of the will. Sugden on Pow. 75. But it was different in regard to the personal effects. The co-executors, however numerous, are regarded in law as one person, and by consequence the acts of any one of them, in respect of the administration of the effects, are deemed to be the acts of all; for they all have a joint and entire authority over the whole property. 1 Lomax on Ex’rs. 358. From this it follows, that any one of the executors who qualifies, may do whatever all of them could do, if there be several, in regard to the personal estate. In this respect, the rule is the same in reference to trustees. Although all the acting co-trustees are required to join in acts concerning the trust estate, yet a trustee who has disclaimed or renounced, need not join in any sale or other dis *358 position of the estate, or in receipts for the trust moneys. Adams v. Taunton, 5 Mad. Rep.; Hill on Trustees, 307. Our conclusion therefore, is, that if both the executors were empowered by the will to carry into effect the direction to secure these legacies to the legatees, either of them who qualified might do it.
It is next insisted that these are demonstrative legacies, and that if loss has resulted from the investment, it must be borne by the estate, not by the legatees. This species of legacy, is a legacy of mere quantity, or of so much money, to be paid out of a specific fund appropriated for the purpose. 2 Wms. on Ex. 338; 2 Lomax, 35. It is very clear, that these legacies are not of that description ; no particular fund was set apart by the will for their payment, but they stood as a charge upon the whole estate. In such case if the investment fail, if it were properly made, the loss falls upon the legatee. Clark v. Foster, 8 Met.; 2 Ball & Beat. 54.
To hold differently in this case, would be to tie up all the other legacies contained in the will, until the time for the payment of these arrived! These legatees would have had a right to compel the investment of their legacies, according to the directions of the will. 2 Wms. on Ex’rs. 1004. If the executor voluntarily did that which the court would have compelled him to do, his act will be protected.
The only remaining inquiry is, whether it was competent for the executors to lend out the fund upon mortgage for the benefit of the legatees. This must depend upon the intention of the testator, as declared in the will.
The legacies were not absolute, but conditional, dependent on ■the marriage, or arriving at age of the legatees. If all died before the happening of either of these events, the legacies were not to be paid, but were to sink into the residuum. Cross remainders by implication, seem also to have been intended. Until the time of payment should arrive, it was the intention, that the legacies should be secured, and the interest only, paid annually to the legatees. The will itself says, “ to carry fully in effect all my bequests, I hereby appoint Benton and Bodley jointly my administrators.” It could not be known, until the *359 contingencies happened, whether or not the payment of the principal was ever to be made; until that time the- intention seems to have been, to leave the fund- under the control and management of his executors. Otherwise they could not carry fully into effect all the bequests.
It may be that the lending out the money, was to be done in the character of trustee, but that would not vary the principle. The act of the trustee would bind the legatee.
This opinion, of course, applies only to the case in its present shape. If there were any want of good faith on the part of the executor, or an absence of that degree of caution which men of ordinary prudence exercise in the management of their own affairs, then another question as to the personal liability of the executor may arise. Of such question the probate court has no cognizance, and consequently it cannot enter into our consideration at present.
The decree of the probate court is reversed, and the decree directed to be so modified, as to require the executor to pay to the petitioners, whatever sum can be collected of the investment made for the legatees that amounts to their proportion.
The costs of the court below to be paid by the executor out of the estate.